NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NELLY VAZQUEZ,** *Plaintiff,* v. **COMMISSIONER OF SOCIAL SECURITY,** *Defendant.* | No. 18-1496 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE.**

Before the Court is Nelly Vazquez's ("Plaintiff") request for review, ECF No. 13, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security's ("Commissioner") denial of Plaintiff's application on behalf of her minor son, A.H., for supplemental security income ("SSI") benefits. Plaintiff argues that: (1) the ALJ failed to adequately set forth the basis for her findings; and (2) the ALJ's conclusions were not supported by substantial evidence. For the reasons set forth in this Opinion, the Court **VACATES** and **REMANDS** this case for further proceedings.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Factual findings must be affirmed if they are supported by substantial evidence. Id. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

### B. The Three-Step Child Disability Test[1]

A child is considered disabled under the Social Security Act (the "Act") if: (1) the child is not working; (2) the child has a "severe" impairment or combination of impairments; and (3) the impairment, or combination of impairments, was of Listing-level severity, meaning the impairment(s) meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. T.C. ex rel. Z.C. v. Comm'r of Social Sec., 497 F. App'x 158, 160 (3d Cir. 2012) (citing 20 C.F.R. § 416.924(a)). In applying this test, the Commissioner must consider all evidence in a claimant's case record, including medical evidence, test scores, information from medical sources, and statements from non-medical sources who know the claimant. 20 C.F.R. § 416.924a(a).

At step three, "functional equivalence" is determined by evaluating the following six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. T.C. ex rel. Z.C., 497 F. App'x at 160 (quoting 20 C.F.R. § 416.926a(b)(1)).

---

[1] Plaintiff's son was born on May 16, 2005, and was eleven years old at the time of the Commissioner's decision on remand, making him a child under the Act. See 20 C.F.R. § 416.926a(g)(2)(iv).

"A medically determinable impairment or combination of impairments functionally equals a listed impairment if it 'result[s] in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" Id. (quoting 20 C.F.R. 416.926a(a)). A "marked" limitation in a domain is one that "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(3)(i).

## II. BACKGROUND

### A. Procedural History

On April 11, 2012, Plaintiff filed an application for SSI on behalf of her son A.H., alleging that A.H. became disabled on November 15, 2011, due to attention deficit hyperactivity disorder ("ADHD"). Administrative Transcript ("Tr.") 117, ECF No. 8. Plaintiff's claim was denied initially on August 25, 2012, and upon reconsideration on May 14, 2013. Tr. 158-62, 166-68. On September 12, 2014, an Administrative Law Judge ("ALJ") issued an opinion concluding that the child was not disabled. Tr. 136-53. On December 21, 2015, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further consideration. Tr. 154-57. On February 24, 2017, a different ALJ issued an opinion on remand concluding that the child was not disabled. Tr. 14-32. The Appeals Council denied Plaintiff's request for review of the remand decision on December 1, 2017. Tr. 3-8. Plaintiff appealed to this Court on February 2, 2018. ECF No. 1.

B. **Factual Background**

1. **Partial Hospital Program and April 2012 Assessment**

From November 2011 to January 2012, A.H. attended a Partial Hospital Program at Trinitas Regional Medical Center ("Trinitas") for psychiatric treatment. Tr. 413. On January 18, 2012, A.H. underwent a psychiatric assessment for aggressive behavior attributed to combined ADHD and oppositional defiance disorder ("ODD"). Tr. 396-411, 413. On April 4, 2012, Dr. Paul Kennedy evaluated A.H. because of disruptive behavior at school. Tr. 413-16. At the time of the evaluation, A.H. was not on medication because Plaintiff had declined to allow him to take any. Tr. 413. Dr. Kennedy diagnosed A.H. with ADHD and gave him a Global Assessment of Functioning ("GAF") score of 45. Tr. 415. A.H. was admitted to a partial hospital program to prevent hospitalization. Id. At that time, Plaintiff agreed to authorize the use of psychotropic medication to help the child's ADHD symptoms. Id.

2. **Child Function Report**

At some point, Plaintiff completed a "Function Report – Child Age 3 to 6th Birthday" (the "Function Report") for the child. Tr. 270-77. The Function Report, which is undated, indicated certain limitations in A.H.'s abilities to communicate and understand and use what he had learned. Tr. 270, 273. Plaintiff reported that the child's impairment affected his behavior with other people. Tr. 275. Plaintiff also noted that A.H.'s physical abilities were limited but did not specify how. Id.

3. **2012 to 2014 Group Therapy and Medication Management**

Between 2012 and 2014, A.H. received group therapy and medication management services from Trinitas. Tr. 473-554. A.H. needed considerable redirection during some therapy sessions, but he was able to follow directions with minimal redirection during others. Tr. 485,

4

487, 491, 493. On several occasions, Plaintiff and other caregivers reported that the medication was helping the child with no side effects or behavioral problems. Tr. 497, 506, 511, 513, 534. However, treatment notes indicate that Plaintiff did not always give A.H. his medication. Tr. 475-76, 483-84, 516.

### 4. May 2012 Special Education Evaluation

On May 17, 2012, A.H.'s school evaluated him for special education services. Tr. 433-46. Plaintiff reported seeing a tremendous difference in the child since he began taking medication the previous month. Tr. 434. His Full Scale Intelligence Quotient ("FSIQ") was 99, which fell within the average range. Tr. 445. While A.H. had average overall cognitive ability, testing revealed that his overall adaptive skills were below average. Tr. 444-45. The evaluation team concluded that A.H. would benefit from special education services. Id. The school developed an initial Individualized Education Plan ("IEP") for A.H. in June 2012. Tr. 460-66.

### 5. December 2012 and March 2013 Teacher Questionnaires

In December 2012, Susan Ackerman, A.H.'s special education teacher, completed a questionnaire. Tr. 295-302. Ms. Ackerman reported that A.H. generally had slight to very serious problems with attending and completing tasks, including a preoccupation with keeping organized and taking inappropriate amounts of time to complete assignments. Tr. 296. In the domain of acquiring and using information, she rated A.H. as having slight to serious problems, particularly with reading and writing. Tr. 297. Ms. Ackerman indicated that A.H. generally had slight to obvious problems in the domain of interacting and relating with others, but noted that he had a very serious problem with expressing anger appropriately. Tr. 298.

In March 2013, Ms. Ackerman completed a second questionnaire. Tr. 303-10. She reported obvious to serious problems in the domain of acquiring and using information, explaining

5

that A.H. took excessive amounts of time to perform written assignments because he was preoccupied with neatness. Tr. 304. She indicated that A.H. had slight to very serious problems with attending and completing tasks and could be disruptive, aggressive, and non-compliant even with individual assistance. Tr. 305. Ms. Ackerman also reported slight to very serious problems in the domain of interacting and relating with others. Tr. 306.

### 6. August 2012 and May 2013 Disability Determination Explanations

In August 2012, Theresa Soricelli, a disability examiner, and Sharon Flaherty, Ph.D, completed a Disability Determination Explanation ("DDE") in connection with Plaintiff's initial SSI application. Tr. 117-25. They concluded that while A.H.'s impairment was severe, his condition did not meet, medically equally, or functionally equal a Listing. Tr. 120-22. According to the DDE, A.H. had either less than marked or no limitations in five domains of functioning. Tr. 121-22. The DDE did not contain a rating for interacting and relating with others. Tr. 121. The DDE noted that while A.H. "had tremendous problems earlier in the year," Plaintiff reported seeing a drastic improvement since the child began taking medication. Id.

In May 2013, Pathfins Okezie, a disability examiner, and Joan F. Johnson, Ph.D, completed a second DDE. Tr. 126-35. The DDE reported a marked limitation in the domain of interacting and relating with others and either less than marked or no limitations in the other domains. Id. The DDE reviewers concluded that A.H. had a severe impairment, but it did not satisfy the requirements of a Listing. Tr. 131.

### 7. August 2014 Responses to Interrogatories

On August 8, 2014, Dr. Sreedevi Chandrasekhar responded to interrogatories provided by the ALJ. Tr. 555-70. According to Dr. Chanrasekhar, A.H. exhibited no or less than marked limitations in all domains of functioning when taking medication. Tr. 568-69. He noted that there

had been significant problems from approximately April 2012 to March 2013. Tr. 565. However, once the child began regularly taking medication, he was doing well. Id. The responses stated that "medication compliance is crucial" and that A.H.'s behavior was unacceptable when off medication. Tr. 565.

### 8. April 2015 IEP

In April 2015, A.H.'s school developed another IEP for him. See Tr. 351-70. The IEP reported that A.H. struggled with reading grade-level texts and required many modifications. Tr. 353. According to the IEP, the child's reading scores corresponded with "low levels of a second grade student," despite receiving fourth-grade reading instruction. Id. The IEP reported fewer problems with A.H.'s math functioning, noting that he had received a perfect score of 300 on a 2014 state standardized test and had an average FSIQ of 99. Id. The IEP further explained that A.H. was "a bright student" who needed "lots of motivation and redirection to succeed in the classroom." Id. Overall, while A.H. continued "to have instances of poor decision making," the IEP found that he had "been mostly successful with the classroom behavior management plan." Tr. 354.

### 9. September 2015 to June 2016 School Disciplinary Records

By letter dated September 27, 2015, A.H.'s school notified Plaintiff that A.H. had "threaten[ed] to shoot and kill a classmate parent [sic]" and was required to undergo psychiatric evaluation before he could return to school. Tr. 384. Between March 2016 and June 2016, A.H. was suspended from school on four occasions for disrespecting staff, defying authority, fighting, and theft. Tr. 378-79.

### C. The ALJ Decisions

#### 1. The Initial ALJ Decision

In the initial decision, the ALJ concluded that the child's ADHD[2] was a severe impairment, but the impairment did not meet, medically equal, or functionally equal a Listing. Tr. 142. The ALJ found: (1) a marked limitation in the domain of interacting and relating with others; (2) less than marked limitations in the domains of acquiring and using information and attending and completing tasks; and (3) no limitations in the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being. Tr. 144-50. In making her determination, the ALJ considered Plaintiff's hearing testimony and "g[a]ve great weight" to Dr. Chanrasekhar's 2014 interrogatory responses. Tr. 143-44. The ALJ also noted that school records indicated that A.H. had an average FSIQ, high visual-motor testing scores, and below average adaptive skills. Tr. 144. The ALJ concluded that A.H.'s marked and less than marked limitations "were likely the result of noncompliance with recommended medication." Id.

On December 21, 2015, the Appeals Counsel vacated and remanded the initial ALJ decision. Tr. 154-57. The Appeals Council directed the ALJ on remand to: (1) explain the evidentiary basis and rationale for its findings; and (2) consider evidence proffered by the child's teacher and other non-"acceptable medical sources." Tr. 155.

#### 2. The ALJ Remand Decision

On remand, the ALJ summarily addressed steps one and two of the three-part child disability test. First, she found that A.H. had not engaged in substantial gainful activity since the SSI application date. Tr. 20. Second, she found that A.H.'s ADHD and ODD were severe impairments. Id. At step three, the ALJ found that none of his impairments individually or in

---

[2] Plaintiff's initial claim for disability listed only ADHD as an impairment. See Tr. 117.

combination met, medically equaled, or functionally equaled the severity of a Listing. Tr. 20-28. The ALJ found a marked limitation in the domain of interacting and relating with others. Tr. 25. She found less than marked limitations in three domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; and (3) and caring for yourself. Tr. 23-24, 27. The ALJ found no limitations in two domains of functioning: (1) moving about and manipulating objects; and (2) health and physical well-being. Tr. 26-27. Accordingly, the ALJ concluded that A.H. was not disabled within the meaning of the Act. Tr. 28.

In support of her findings, the ALJ assigned "great weight" to the 2012 and 2013 DDE determinations. Tr. 23. According to the ALJ, medical, treatment, and school evidence corroborated the DDE reviewers' finding of a less than marked limitation in the domain of acquiring and using information. Id. The ALJ noted that A.H.'s roughly average IQ scores supported this determination, as did the April 2015 IEP, which indicated an improvement in the child's academic functioning since 2012 to 2013. Id. The ALJ also accorded significant weight to the reviewers' determination that A.H. exhibited a less than marked limitation in his ability to attend and complete tasks while on medication, but marked limitations in that domain without medication. Id.

The ALJ cited school and treatment records as evidence that A.H.'s condition had improved over time. Tr. 22-23. Specifically, the ALJ noted that the April 2015 IEP showed that A.H. got along well with his peers and was accepting of adult assistance. Id. Treatment records through 2014 further suggested an improvement, particularly when A.H. took medication on a consistent basis. Tr. 23.

In finding a marked limitation in the domain of interacting and relating with others, the ALJ relied principally on the 2012 and 2013 teacher questionnaires and the 2015 and 2016 school

disciplinary records. Tr. 22. The ALJ referenced Ms. Ackerman's observations that A.H. had outbursts, threw temper tantrums, and required close teacher supervision and structured monitoring. Id. The ALJ accorded only partial weight to the teacher questionnaires on the basis that they were "remote" and not wholly supported by the record, although she did not indicate how with any specificity. Id. With respect to the school disciplinary records, the ALJ concluded that there was insufficient information surrounding the September 2015 incident, and further noted that there was some improvement in the child's behavior thereafter "as there were no suspensions or interpersonal misconduct problems in the Fall of 2015." Id. However, the decision indicates neither the date on which A.H. returned to school nor the results of the school-ordered psychiatric evaluation.

## III.   ANALYSIS

Plaintiff seeks reversal on the basis that the record contains substantial evidence to support a finding of disability, or in the alternative, remand on the basis that the ALJ failed to consider all relevant evidence and sufficiently explain her reasoning. The Commissioner argues that the ALJ's findings are supported by substantial evidence. The Court agrees with Plaintiff and finds remand appropriate in light of the ALJ's failure to assess all relevant evidence and adequately explain the evidentiary basis for her conclusions.

An ALJ must provide "a clear and satisfactory explication of the basis on which [her decision] rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). In so doing, an ALJ must consider all pertinent evidence and explain the reasons for discounting contradictory evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121-22 (3d Cir. 2000). Although an ALJ is not required to use "particular language or adhere to a particular format," the ALJ must sufficiently explain her findings "to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir.

2004). Where probative and available evidence is not explicitly weighed, remand is appropriate. Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (citations omitted).

Here, the ALJ failed to set forth her basis for finding that A.H.'s impairments did not meet or medically equal a Listing. While the ALJ identified the relevant medical Listings, the opinion offers no analysis for its conclusion that the record does not demonstrate the symptoms enumerated in each Listing. See Tr. 20. Rather, in finding no medical equivalence, the ALJ simply stated, in conclusory fashion and without reference to record evidence, that the record did not satisfy the Listings. See id. While the ALJ was not required to use particular language in making her determination, such conclusory statements do not permit meaningful review. See Jones, 364 F.3d at 505.

In evaluating A.H.'s functional equivalence, the ALJ failed to consider how much assistance A.H. needed to function as compared with other non-impaired children his age. Under 20 C.F.R. § 416.924a(b)(5)(ii), when determining functional equivalence, the ALJ must assess "how independently [the child is] able to function compared to other children [his] age who do not have impairments," including whether the child "need[s] help from other people, or . . . special equipment, devices, or medications to perform [his] day-to-day activities." The regulations further provide that the ALJ must consider the effects of structured or highly supportive settings in determining the presence of a disability, including classroom settings and accommodations. 20 C.F.R. § 416.924a(b)(5)(iv). Here, although the ALJ referenced treatment records indicating that the child's behavioral symptoms had improved while on psychotropic medication, she did not explain what weight, if any, was given to the fact that A.H. needed medication to perform his day-to-day activities. See Tr. 23. Indeed, several parts of the record, including the May 2012 special education evaluation and Dr. Chanrasekhar's 2014 interrogatory responses, suggest that

11

A.H. benefitted greatly from taking medication, and the ALJ should consider all such evidence on remand. The ALJ also failed to consider if the child was on medication when he exhibited behavioral problems in 2015 and 2016 and whether he is still compliant with his medication. On remand, testimony should be taken from a treating physician who can opine on whether the later-documented behavioral problems would have occurred while A.H. was on medication.

Similarly, while the decision noted that A.H. required redirection, motivation, and other assistance from his teacher in the classroom, it is not clear whether the ALJ considered this evidence in evaluating any domain other than interacting and relating with others. See Tr. 22-23. Notably, the ALJ made no mention of the fact that A.H. was receiving special education services in her decision, as contemplated by the regulations. On remand, the ALJ should consider the impact of such services on A.H.'s ability to function. See A.B. on Behalf of Y.F. v. Colvin, 166 F. Supp. 3d 512, 520 (D.N.J. 2016) (remanding for consideration of impact of structured school setting on child's ability to function).

The ALJ's decision also improperly discounted certain probative evidence without rational explanation. For example, the ALJ accorded "great weight" to the DDE reviewers' determinations from 2012 and 2013, but she assigned only "partial weight" to Ms. Ackerman's questionnaire responses from the same period on the basis that they were "remote" and "not wholly supported by the record." Id. The ALJ neither specified which parts of the questionnaire responses were unsupported by the record nor reconciled how those responses were "remote" while the DDE reviewers' determinations were not. In fact, the record appears to corroborate at least some of Ms. Ackerman's observations. As just one example, Ms. Ackerman noted in both the 2012 and 2013 questionnaires that A.H. exhibited serious problems in reading comprehension, and the April 2015 IEP documented similar concerns regarding A.H.'s reading ability. Tr. 297, 304, 353.

Furthermore, in analyzing the 2015 and 2016 school disciplinary records, the ALJ concluded that there was insufficient evidence regarding the September 2015 incident, while discounting the fact that the record includes a letter from a social worker indicating that the child was required to undergo a psychiatric evaluation "[d]ue to . . . social and emotional difficulties" before returning to school. Tr. 384. The ALJ also noted that there was some improvement in the child's behavior after the September 2015 incident, yet failed to reconcile this conclusion with the record evidence showing that the child received four separate school suspensions for behavioral problems only a few months later. Tr. 378-79. The ALJ's failure to properly consider all relevant evidence compels remand. See A.B. on Behalf of Y.F., 166 F. Supp. at 522 (remanding for failure to weigh probative evidence).

**IV.    CONCLUSION**

For the reasons stated above, the Court finds that the ALJ failed to adequately set forth the basis for her decision and explicitly weigh all probative evidence of disability. The ALJ's decision is **VACATED** and **REMANDED** for further proceedings consistent with this Opinion. On remand, the ALJ is directed to address all evidence of impaired functionality as well as her reasons for rejecting or discounting that evidence. In remanding today, the Court makes no factual findings. An appropriate Order accompanies this Opinion.


Date: December 19, 2019              /s/ *Madeline Cox Arleo*            .
                                                **Hon. Madeline Cox Arleo**
                                                **UNITED STATES DISTRICT JUDGE**